## RUSSELL v. KOLLER et al.

No. 8975—Opinion Filed July 23, 1918.

(174 Pac. 560.)

**1. Homestead — Abandonment — Intent— Questions of Fact.**

Upon the issue whether or not a homestead has been abandoned, the main question is that of the real intent of the homestead claimant, and its determination involves a question of fact.

**2. Same—Intent.**

Where the removal from the homestead is unaccompanied by a present intention, existing at the time of the removal, to return to the homestead, but a mere probable future purpose to do so, depending on a contingency which might never happen, the homestead exemption is thereby abandoned.

**3. Same—Intent to Return.**

The intention to return, by which the homestead rights are preserved, must be formed at the time the removal occurs, and can have no influence whatever in restoring the rights once lost by actual abandonment, until executed by a resumption of the occupancy that formerly characterized it as a homestead.

(Syllabus by Davis, C.)

Error from District Court, Kay County; W. M. Bowles, Judge.

Action by John H. Koller and others against Mrs. Viola Russell, formerly Mrs. Viola Easterday, and others. Judgment for plaintiffs. From a judgment confirming execution sale of property claimed as a homestead defendant Russell brings error. Affirmed.

C. T. Atkinson, for plaintiff in error.

James Q. Louthan, for defendant in error Koller.

Opinion by DAVIS, C. On December 13, 1913, J. H. Koller, one of the defendants in error, brought suit in the district court of Kay county, and caused summons to be issued thereon to the defendants in that action, one of whom was Mrs. Viola Russell, whose name at that time was Viola Easterday, she being the wife of J. B. Easterday. John H. Koller, subsequently obtained a judgment in said action against J. H. Easterday and plaintiff in error; she being at that time the wife of J. B. Easterday. Some time after this judgment was rendered, and before an execution was issued J. B. Easterday and his wife, plaintiff in error, separated, and a divorce was afterwards granted. At the time this action was instituted and judgment obtained, J. B. Easterday and plaintiff in error were residing in Osage county, Okla., and were engaged in farming. After the divorce was granted, Mrs. Easterday, plaintiff in error in this action, moved to Ponca City, Okla., where she engaged in the business of running a hotel. She later married William Russell, and after this marriage the plaintiff in error and her husband, Wm. Russell, moved to Augusta, Kan., where her husband engaged in daily labor. They moved to Augusta, Kan., about 12 months prior to the date when this execution was issued. When execution was issued, it was levied on lots 11 and 12, block 9, in Bluffdale, a legal subdivision of Ponca City, Kay county, Okla., which property was in the name of Mrs. Viola Russell. This property was advertised and sold by the sheriff of Kay county to A. W. West, one of the defendants in error, for the sum of $315. A motion was filed to confirm the sale of this property.

On July 26, 1916, the plaintiff in error filed her motion to set aside the sale of this property, for the reason that the same was on the date of said sale, and a long time prior thereto, her homestead, and by reason thereof was exempt from forced sale to satisfy a judgment formerly obtained against plaintiff in error and J. B. Easterday, her former husband. Issues were joined on this question, and on the 9th day of October, 1916, said motion came on to be heard before the Hon. W. M. Bowles, presiding judge of the district court of Kay county. The evidence in this case discloses that the plaintiff in error had obtained title to the property in controversy from her former husband, J. B. Easterday, that she had paid some mortgages that had been placed on the property, and, when the trouble arose between her and her former husband, a deed was executed by J. B. Easterday to plaintiff in error. In the divorce action no mention is made of the property in question. The evidence further discloses that for four years prior to the date of the issuance of the

execution herein the plaintiff in error had not lived on the property described as lots 11 and 12, block 9, in Bluffdale, a legal subdivision of the city of Ponca City, Okla., but that the property had been continuously rented, and the rents derived therefrom were paid to the plaintiff in error. The evidence further discloses that during a considerable portion of the 4 years the plaintiff in error and her former husband, J. B. Easterday, were engaged in farming in Osage county, Okla., and during a portion of said time some of the children of the plaintiff in error lived in this house and attended school at Ponca City, and on Friday night returned to the farm in Osage county. After the divorce was obtained by the plaintiff in error from her former husband, she went to Ponca City and engaged in the business of running a hotel for some time. About 2 months prior to the marriage of plaintiff in error to W. T. Russell, her present husband, she lived in private rooms in Ponca City, Okla. When she was married to her present husband, they immediately moved to Augusta, Kan., and rented a home and remained there until the property in question was sold.

The plaintiff in error claims that she had never abandoned the property in question, but at all times claimed it as her homestead, and by reason thereof that she is entitled to have this sale set aside. The evidence of the plaintiff in error on the question of abandonment is as follows, on direct examination:

"Q. Now, what was your intention when you went to Kansas about returning to Oklahoma? A. Well. I intended to return always, if I could secure work for a living. Q. What I want to know is, did you go away with the intention of staying away permanently and obtaining a home elsewhere? A. No, sir; I did not. Q. Now tell the court what your intention was when you went away. A. Well, I just intended to go to get work, is all I can say; we was out of work, and had to have a job, and we went there to get work. Q. What was your intention when you went away with reference to returning and making this your home? A. That is my home. I claimed that as my home always. Q. Have you ever had any intention of leaving it? A. Not leaving it; no. Q. I mean, leaving it as a home. A. Leaving it as a home? No; I never had any intention of leaving it as a home, unless I should have traded it for a home; that is all. Q. You expected to trade it for a home here in Oklahoma, if you could? A. I would, if I could have; I would if I found anything I liked better; but I haven't found nothing that I liked better. Q. What is your present intention with reference to returning and oc-

cupying that home? A. I don't like it where we live, and I intend to live here some day."

On cross-examination the plaintiff in error testified as follows:

"Q. When did you intend to return to this property? A. That is a question; whenever we can obtain work, to make a living, then is when I aim to return. Q. Then it might be tomorrow you would return, and it might be ten years; is that right? A. Whenever the boom comes on, or there is anything doing, I am ready to come. Q. If there is not anything doing, then you would not return? A. Well, that is the question. Q. That is the question I am asking you. Is that true? A. Yes; whenever I can make a living is when I am coming; whenever I can make a living at Ponca City, I am going to move back. Q. And if you keep on making a living at Augusta, you are going to stay there? A. No: whenever Ponca City comes to be a better place, I am going to move back. I don't like Augusta, and I am going to come back. Q. If Ponca City does not become a better place, then you won't return? A. If I could get work, I would. Q. How long have you been away from there? A. I have just been away from there a year."

The foregoing evidence constitutes all that is material to a consideration of this case. Numerous witnesses testified, both for the plaintiff in error and for the defendants in error, and it appears from the undisputed evidence that the property had not been occupied for a period of 4 years by the plaintiff in error, and that at the time she moved to Augusta, Kan., there was no expressed intention made of returning to Oklahoma. After her marriage to her present husband the property in question was never occupied by them. She went to Augusta, Kan., with her husband, where he obtained work, they rented a house and have been residing there until the property in question was sold.

From the foregoing facts the judge before whom this cause was tried found that the evidence was insufficient to establish the fact that the property in question had ever been impressed with the character of a homestead. The trial judge, in speaking of the evidence, made the folowing statement:

"I have always gone a long ways to protect the home of a family; but it is a question whether there ever was a real, legitimate homestead in this wife, by her first husband. He lived out in the Osage country, and it has not been established that he ever lived in this property. The children except during the school season, were not where the husband was. and that was their home. When she divorced him, and did not live in this property at all during the time she was in the hotel business, afterwards

she married, and did not live in the property at all after that time."

Judgment was rendered, confirming the sale by the sheriff of the property in question. and a deed was ordered to be issued to the defendant in error A. W. West. A motion for a new trial was duly filed, and cause was brought here upon petition in error.

The only ground upon which a reversal of this judgment is sought is that the court erred in ruling on the motion and finding that the realty in question was not her homestead. The question whether or not there has been an abandonment of a homestead, or whether a homestead has in fact been established, is a question of fact, to be determined by the trial court, and, where the evidence reasonably tends to support the finding of the trial judge, the judgment will not be reversed. The evidence in this case fails to disclose that at the time the plaintiff in error moved from Ponca City to Augusta. Kan., she had a present and definite intention of returning to Ponca City, Okla., but, on the contrary, the evidence shows that her return depended solely on conditions that might or might not develop. In the case of Carter v. Pickett, reported in 39 Okla. 144, 134 Pac. 440, the court, speaking through Judge Sharp, announced the following rule:

"Where there is no present intention to return existing at the time of removal, but a mere possible, or at most probable, future purpose. contingent upon the happening or not happening of a particular event, a removal from the homestead constitutes an abandonment thereof. Wolf v. Hawkins, 60 Ark. 262, 29 S. W. 892; Lehman v. Bryan, 67 Ala. 558; Conway v. Nichols, 106 Iowa, 358, 76 N. W. 681, 68 Am. St. Rep. 311; Bennett et al. v. Dempsey, 94 Miss. 406, 48 South. 901. 136 Am. St. Rep. 584; Smith v. Bunn, 75 Mo. 559. No effort to assert her rights to a homestead was made by plaintiff until November 1, 1910, and her testimony of a conditional intent to return was based upon the court's action thereon. In other words, it was not a present intent existing at the time of the removal, but the assertion, for the first time, of a purpose to return after the administrator had taken possession of the property of the estate, and, as the evidence fairly tends to prove, had paid taxes thereon. As was said in Lehman et al. v. Bryan. supra: 'It was therefore an abandonment for the present, with the possibility of a future change in purpose. The animus revertendi was not a present intention existing at the time of the removal, but a mere possible, or at most probable, future purpose.' The intention to return, by which the homestead rights are presented, must be

formed at the time the removal occurs. It can have no influence whatever in restoring the right once lost by actual abandonment, until executed by a resumption of the occupancy that once characterized it as a homestead. Thompson on Homesteads and Exemptions. § 267."

The facts in the foregoing case seem to be very similar to the facts in the present case, in that a return to the property for the purpose of using it as a homestead was contingent on the happening of a future event. In each case there is a possibility that the event might never happen. The return of the plaintiff in error to the property that she is here claiming as her homestead depended on whether or not conditions would ever arise that would enable her to make a living in Ponca City, Okla., or until a boom should come in said town. We are of the opinion that when she married her present husband, and immediately moved with him to Augusta, Kan., and there established a home. with no present intention to return, except upon the happening of a future contingency. she abandoned whatever claim she might have had to the property in question as a homestead. We are led to this conclusion. also, by reason of the fact that the trial judge, after hearing all the evidence, seeing the witnesses. hearing them testify, and observing their demeanor while on the witness stand, concluded that it was very doubtful if the property in question had ever been a homestead of plaintiff in error.

The views in this case are not inconsistent with the views expressed in the case of German State Bank of Elk City v. Ptachek et al., reported in 67 Okla. 176, 169 Pac. 1094. In that case Caroline Ptachek, as executrix of the estate of Charles Ptachek, was seeking to have certain property set aside to her as a homestead by the county court. The facts in that case showed that Caroline Ptachek and Charles Ptachek were the owners of a farm in Washita county, and that prior to the husband's death they rented the farm and moved to a small town, where the husband engaged in the business of blacksmith. After his death the widow made application to the county court of Washita county to have the same allotted to her as a homestead. This the county court did and the German State Bank of Elk City appealed from the action of the county court to the district court of Washita county, and subsequently appealed the cause to this court, where the judgment of the district court was affirmed. The rule laid down in the case of Carter v. Pickett, supra, was expressly approved, and held not to be in

conflict with the rule announced in said cause. The question of abandonment of a homestead or the question whether or not a homestead has been established, being a question of fact, to be determined by the trial court as in any other case, the judgment of the trial court should be affirmed, where it appears that the evidence reasonably supports the finding.

We therefore recommend that the judgment of the district court be affirmed in this cause.

By the Court: It is so ordered.